**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | Nos. 23-2939, 24-396 |
| *Plaintiff - Appellee*, | D.C. No. 4:21-cr-00163-HSG-1 |
| v. | |
| ATTILA COLAR, AKA Sharieff Dahood Bey, AKA Sharieff Pasha, AKA Georgi Petrakov, AKA Dahood Shariff Bey, | OPINION |
| *Defendant - Appellant*. | |

Appeal from the United States District Court
for the Northern District of California
Haywood S. Gilliam, Jr., District Judge, Presiding

Argued and Submitted March 11, 2026
San Francisco, California

Filed July 21, 2026

Before: Holly A. Thomas and Anthony D. Johnstone, Circuit Judges, and Hernan Diego Vera, District Judge.[*]

Opinion by Judge Johnstone

---

[*] The Honorable Hernan Diego Vera, United States District Judge for the Central District of California, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel vacated Attila Colar's conviction on 44 counts arising from an alleged scheme to defraud the Paycheck Protection Program and efforts to obstruct the investigation, reversed the district court's judgment, and remanded for a new trial.

At voir dire, pro se defendant Colar, who is a Black man and a Muslim, advanced a defense theory that he maintained throughout his trial: law enforcement targeted him based on his race and religion. After the jury was impaneled, an alternate juror expressed actual bias against Colar. He told the court that he had a strong negative reaction to Colar's defense and that he had concluded that the defense lacked substance and credibility.

The panel held that the juror's statement raised a colorable issue of whether he was actually biased, and that the district court abused its discretion by failing to promptly investigate the juror, deferring inquiry until a seat opened, and conducting an inadequate colloquy after the juror had heard evidence. The record as a whole was unclear as to whether the juror unequivocally committed to setting aside his bias, and this doubt should have been resolved against him. The court's failure to excuse him was an abuse of discretion. These errors ultimately deprived Colar of his Sixth Amendment right to an impartial jury.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

In a concurrently filed memorandum disposition, the panel affirmed the district court's denial of Colar's motion for acquittal.

**COUNSEL**

Ross D. Mazer (argued), Assistant United States Attorney; Merry J. Chan, Chief, Appellate Section, Criminal Division; Craig H. Missakian, United States Attorney; Office of the United States Attorney, United States Department of Justice, San Francisco, California; for Plaintiff-Appellee.

David L. Annicchiarico (argued), Law Office of David L. Annicchiarico, San Francisco, California; Robert J. Beles, Law Offices of Beles & Beles, Oakland, California; for Defendant-Appellant.

## OPINION

JOHNSTONE, Circuit Judge:

The Sixth Amendment guarantees criminal defendants the right to trial by an impartial jury. The participation of even a single biased juror in rendering a guilty verdict is structural error requiring reversal. To safeguard this right, a district court must address any signs of bias during jury selection and throughout trial. The court has broad discretion over how to investigate a juror's impartiality. That discretion, however, governs the form of the inquiry, not whether to conduct one. Once a colorable issue of juror bias arises, the court must investigate before the juror continues to serve, and the inquiry must match the seriousness of the claim. The court cannot defer that obligation simply because the juror is an alternate.

A jury convicted Attila Colar on 44 federal counts arising from an alleged scheme to defraud the Paycheck Protection Program and efforts to obstruct the investigation. At voir dire, Colar advanced a defense theory that he maintained throughout his trial: law enforcement targeted him based on his race and religion. After the jury was impaneled, an alternate juror expressed actual bias against Colar. He told the court that he had a strong negative reaction to Colar's defense and that he had concluded that the defense lacked substance and credibility.

The district court abused its discretion by deferring any meaningful investigation into the juror's bias until he was needed on the regular panel. And its belated inquiry did not confirm that the juror could set aside the bias he previously expressed or that continued exposure to the defense theory would not revive it. The juror's resulting participation in the

verdict was structural error. We reverse and remand for a new trial.[1]

# I. BACKGROUND

In 2017, Colar co-founded a nonprofit that provided transitional housing and support services for individuals seeking reentry into independent living. Colar allegedly used stolen identities to rent homes for the nonprofit and submitted fraudulent Paycheck Protection Program loan applications on behalf of the nonprofit and two shell corporations. The government tried Colar for 44 federal offenses, including bank fraud, wire fraud, aggravated identity theft, obstruction of official proceedings, and witness tampering. Colar waived his right to counsel, representing himself with the assistance of standby counsel.

## A. Voir Dire and the First Colloquy

Colar, who is a Black man and a Muslim, conducted his own voir dire. He asked prospective jurors if anyone believed that "law enforcement has a history of persecuting black religious organizations." During jury selection on a Friday, Juror 48 actively participated in voir dire, answering questions about his experiences with law enforcement, providing clarifying answers about his ability to be impartial, and asking questions about the trial process. When Colar asked Juror 48 if he believed that law enforcement was trustworthy "in the world today that we're living in," Juror

---

[1] Colar also challenges the sufficiency of the evidence against him. In a concurrently filed memorandum disposition, we affirm the district court's denial of Colar's motion for acquittal. *See United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir. 1986) ("Even though we reverse that conviction, we must address the sufficiency of the evidence supporting it, for if the evidence were insufficient, retrial is barred by the Double Jeopardy Clause."). We do not reach the remaining issues on appeal.

48 responded that "you can't compare the today times with that of Martin Luther King, Junior . . . . Back then it was much more vicious." Colar then closed by framing his defense in terms of government corruption and racial targeting. He told the jury that they would hear things from the prosecution about "Your Black Muslim Bakery or Muslims" because "when you have someone in the community that's trying to help the community . . . law enforcement will turn everything around and paint a different picture about that individual . . . ."

Juror 48 was selected as the first of four alternates. Shortly after taking the oath, he asked to speak with the court. He began by saying, "I was hoping this wasn't going to be an issue because I stayed engaged for all the hours and everything. And then the defendant spoke, and all that came out was discrimination, conspiracy theories, and police corruption." He continued: "That just upsets me to no end, because being gay, trans, and non-binary, having bottles thrown at my head when exiting gay bars, being denied housing for being gay, when that's the only thing [Colar] talked to us about, I'm sorry, that's just festering in my head right now." According to Juror 48, there was "no way [he was] going to be able to get that out of [his] head." He also reacted to Colar's claim that the prosecution was "turning a small thing into a big thing": "So there is a thing. That's just going to stick in my head the entire time."

When the court reminded Juror 48 that his task was to evaluate the government's evidence and decide whether the government met its burden of proof, he did not retreat from his views. He acknowledged that the court had discussed the need for jurors to be impartial. But he expressed strong disapproval of Colar's invocation of "oppression, discrimination against Muslims and Africans, and police

corruption all across the nation" as a defense to the charges. And he suggested that this factored into his ability to evaluate the evidence. "I've actually been discriminated against and I've actually had these issues," Juror 48 said. "It just pisses me off that that's being used as a scapegoat in an instance like this." He added: "Literally the only things that [Colar] said were, were just those three things. Like, there was no substance."

The district court reminded Juror 48 that he had not heard any evidence yet, was tasked only with assessing the evidence provided by the Government, and should serve fairly and impartially. But it did not ask him whether his views and personal experiences would affect his ability to do so. Nor did it announce plans to inquire further before trial began. Colar then requested that Juror 48 be excused. Over that objection, the court told the juror to return on Monday for the first day of trial. It told the parties: "I hear what [Colar] is saying about [Juror 48]. . . . But—and he's coming back Monday. I'll tell you that much. . . . I'll give it some consideration, and if I need to think about it further on Monday, I can."

## B. Trial and the Second Colloquy

On Monday, Juror 48 served on the jury as the first alternate. The parties delivered opening statements, and the government called two witnesses. On Wednesday, the court learned that one of the jurors on the panel could not continue to serve because of a car accident. After excusing that juror, the court said, "So now I need to bring in [Juror 48] and voir dire him since he would now be on the jury given that excusal, and I need to determine if he can serve." Colar objected: "He stated it clearly, you know, that he couldn't be impartial, and he would be biased. He expressed that. And I

was really surprised that the court really didn't excuse him during that time after admitting that he would be biased or prejudicial to me." The court replied, "I hear what you're saying. I'm going to have a further conversation with [Juror 48], and I'm going to make a decision as to him after I have that discussion."

During the discussion, the court told Juror 48 that he was "now part of the jury" and asked him about the views he expressed on Friday. The juror said: "I let my emotions get the best of me on that one," and described how Colar's statements at voir dire "just brought up a lot of the bad issues that had happened in the past. So that little trauma from back then kind of came from nowhere." He asserted that "over the past few days, I remembered exactly, like, there was a report I got afterwards, and I'm completely, like, past all that." He added: "It was a little scratch in the back of my head that really bothered me at first. But, again, given a few days, I'm perfectly over it now. I'm fine." The court asked him if he had any concerns about his ability to be fair and impartial, follow instructions, and evaluate the evidence. The juror replied, "No, I don't."

Colar then spoke to Juror 48. He said, "[Juror 48], I believe that you should be excused, and the reason why is because you did state your bias. . . . What's making you change your mind now?" Juror 48 responded, "When you were speaking during the jury selection, it had brought up some past traumas. . . . I have overcome those things in the past with the support of my friends and my family. I just had to remember that over the weekend . . . ." He continued, "I promise, I am not going to be biased," and "I was able to calm my head back down." When Colar pressed him on what specifically triggered the reaction, the juror reiterated that "it's the fact that the entire thing, the entire time you were

talking, . . . all I was hearing from you was that there was discrimination, that they were against people of the Islamic faith, things like that, and that kind of just got stuck in my head."

The district court asked no further questions and found Juror 48 fit to serve. Colar maintained his objection, stating, "I don't believe that he can put that aside. . . . If something else comes up that I say and it re-triggers [him], . . . I don't think he can put it to the side." The court replied: "It's . . . the position that . . . one would obviously take in your shoes and I understand it, and it is preserved for the record on appeal."**[2]**

## C. Verdict

After an almost three-week trial, with Juror 48 participating, the jury returned a verdict of guilty on all counts. The district court imposed a sentence of 204 months' incarceration and ordered restitution of more than one million dollars. Colar appeals.

We review for abuse of discretion the district court's investigation of Juror 48's bias and its ruling that Juror 48 did not show actual bias. *United States v. Kechedzian*, 902 F.3d 1023, 1027 (9th Cir. 2018); *United States v. Hendrix*, 549 F.2d 1225, 1229 (9th Cir. 1977); *see also United States v. Hinkson*, 585 F.3d 1247, 1260–62 (9th Cir. 2009) (holding that a court abuses its discretion when it fails to apply the correct legal rule or makes a clearly erroneous factual

---

[2] The government contends that Colar waived his actual-bias claim by declining another colloquy with Juror 48 a week after he was seated. But Colar did not intentionally relinquish or abandon a known right. *See United States v. Depue*, 912 F.3d 1227, 1232 (9th Cir. 2019); *United States v. Bolandian*, 173 F.4th 1000, 1010 (9th Cir. 2026) ("Absent a district court's reasonable investigation of a juror bias claim, no subsequent waiver of a juror bias claim can be valid.").

finding). Where an abuse of discretion in investigating bias results in a biased juror participating in the verdict, the error is structural, so it is not subject to harmless error analysis. *See Dyer v. Calderon*, 151 F.3d 970, 973 n.2 (9th Cir. 1998) (en banc). Such an error entitles a defendant to a new trial. *Estrada v. Scribner*, 512 F.3d 1227, 1240 (9th Cir. 2008).

## II. DISCUSSION

The Sixth Amendment guarantees the accused the right to trial by an impartial jury. U.S. Const. amend. VI. The presence of "even a single juror" who is biased deprives the accused of that right. *Dyer*, 151 F.3d at 973; *United States v. Gonzalez*, 214 F.3d 1109, 1111 (9th Cir. 2000).

This rule has deep roots. At common law, a prospective juror was required to be "one that hath such freedome of mind" as to "stand[] indifferent" before taking the oath and serving on the jury. 1 Edward Coke, *The First Part of the Institutes of the Laws of England; Or, a Commentary Upon Littleton* § 234, at 155.b. (19th London ed., 1853). By the eighteenth century the same requirement was settled practice. *See* 4 William Blackstone, *Commentaries* *352 (describing jury selection challenges, including *propter affectum* (because of partiality)); *see also* John Hawles, *The Englishman's Right: A Dialogue Between A Barrister at Law and a Juryman* 2 (A. Shuckburgh ed. 1764) ("For the Office of a Juryman is, conscientiously to judge his Neighbor . . . ." (emphasis removed)). The First Congress wrote it into the Constitution: where Article III had secured only trial "by jury," the Sixth Amendment added that the jury be *impartial*. 1 Annals of Cong. 435 (1789) (Madison). And the early federal courts enforced it. Chief Justice Marshall, riding circuit, recognized that any juror who approaches a case with preconceived opinions about the accused undermines "[t]he

great value of the trial by jury"—a verdict by individuals "uninfluenced by an undue bias of the mind." *United States v. Burr*, 25 F. Cas. 49, 50 (C.C.D. Va. 1807). This view of the Sixth Amendment endures today. *See, e.g.*, *Skilling v. United States*, 561 U.S. 358, 377–78 (2010).

The same standard applies to alternate jurors, who "must have the same qualifications" as any juror. Fed. R. Crim. P. 24(c)(2)(A) ("Alternate jurors must have the same qualifications and be selected and sworn in the same manner as any other juror."); *see United States v. Olano*, 507 U.S. 725, 740 (1993) (describing alternate jurors as "indistinguishable" from regular jurors). Regular and alternate jurors take the same oath to render a verdict according to the law and evidence presented. *See* Fed. Jud. Ctr., *Benchbook for United States District Courts* 362 (7th ed. 2026) (providing a sample juror oath for criminal cases).

We recognize two forms of juror bias: actual and implied. *United States v. Bolandian*, 173 F.4th 1000, 1007 (9th Cir. 2026). This case involves actual bias. That is "bias in fact—the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *Gonzalez*, 214 F.3d at 1112 (citation modified). Actual bias arises when a juror "states that he can not be impartial, or expresses a view adverse to one party's position and responds equivocally as to whether he could be fair and impartial despite that view." *Fields v. Brown*, 503 F.3d 755, 767 (9th Cir. 2007) (en banc). Courts must resolve any doubts about a juror's bias against the juror. *Gonzalez*, 214 F.3d at 1114.

A district court's duty to protect against juror bias begins, but does not end, at voir dire. Voir dire allows the parties and the court to identify and investigate prejudice at

the outset. *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). But the court's obligation does not end when the jury is impaneled; trial courts must remain "ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). When information casting doubt on a sitting juror's impartiality comes to the court's attention during trial, its continuing obligation to ensure an impartial jury can be described in two steps.

First the court must assess whether the information before it amounts to a "colorable claim of juror bias." *Dyer*, 151 F.3d at 974. A colorable claim is not "wholly insubstantial and frivolous." *See Keniston v. Roberts*, 717 F.2d 1295, 1298 (9th Cir. 1983). If the information does not rise to a colorable claim, the inquiry ends. But a court presented with a colorable claim of juror bias must take a second step and inquire further. It "must undertake an investigation of the relevant facts and circumstances" and "erect[], and employ[], a suitable framework for investigating the allegation of bias and gauging its effects." *Dyer*, 151 F.3d at 974, 978 (second citation modified); *see Remmer v. United States*, 347 U.S. 227, 229–30 (1954); *Bolandian*, 173 F.4th at 1008–09.

The court has considerable discretion in how it investigates juror bias. It may attempt a rehabilitative colloquy, *see United States v. Alexander*, 48 F.3d 1477, 1484 (9th Cir. 1995), hold an evidentiary hearing, *see Hendrix*, 549 F.2d at 1227–29, or excuse the juror outright, *see Gonzalez*, 214 F.3d at 1114. Still, this discretion is "not unbounded." *United States v. Eubanks*, 591 F.2d 513, 516 n.3 (9th Cir. 1979). Which framework fits depends on "the content of the allegations, including the seriousness of the alleged misconduct or bias, and the credibility of the

source." *Hendrix*, 549 F.2d at 1227–28; *Dyer*, 151 F.3d at 975 (noting that an in camera hearing to investigate potential bias must "be reasonably calculated to resolve the doubts" about a juror's impartiality). The more serious the claim, the more in-depth the inquiry must be. *See Hendrix*, 549 F.2d at 1229. In conducting this inquiry, the court "must find facts, not make assumptions," *Dyer*, 151 F.3d at 976, resolving any doubts about the juror's impartiality against the juror, *Gonzalez*, 214 F.3d at 1114. And the court should promptly investigate such claims, rather than "leaving the matter in doubt" and the juror in place. *See Dyer*, 151 F.3d at 976.

Applying this framework, we hold that the district court abused its discretion. We appreciate the difficulty of addressing a pro se defendant's challenge to a vocal alternate juror. But Juror 48's statements raised a colorable issue of whether he was biased. That demanded a searching inquiry before he continued to serve on the jury as an alternate. Instead, the court deferred an investigation until Juror 48 was needed for the regular jury panel. This was legal error. *See Hinkson*, 585 F.3d at 1261–62. And the court's belated investigation, after Juror 48 had heard evidence, failed to establish that he set aside the bias he previously expressed or that continued exposure to the defense theory would not revive it. Its finding that Juror 48 was not actually biased thus lacked sufficient support in the record. *Id.* at 1262.

## A. Juror 48 raised a colorable claim of actual bias.

We begin with what Juror 48 said. His statements during the first exchange with the district court raised a colorable claim of juror bias. Before hearing any evidence, Juror 48 prejudged the merits of the case and the credibility of the defense based on his own personal experiences. When discussing Colar's intended defense and its relation to his

own experiences, Juror 48 emphasized, "I'm sorry. That is just absolutely—there's no way I'm going to be able to get that out of my head." Responding to Colar's contention that the government had turned "a small thing into a big thing," the juror drew the inference—"so there is a thing"—that there was criminal misconduct. He dismissed the defense as having "no substance" and claimed that Colar was using oppression and discrimination "as a scapegoat." And by stressing that he had "actually" suffered discrimination, in contrast to Colar, he signaled that he already found the defense theory unreliable. A juror who decides, before the presentation of evidence, that the defendant has committed wrongdoing and does not have a legitimate defense theory shows that he cannot be impartial. *See Fields*, 503 F.3d at 767.

Juror 48's statements did not express merely abstract concerns. They were rooted in his personal experience and emotion, and he told the court in plain terms that he would not be able to set them aside. Colar's defense had upset him "to no end" and was "going to stick in [his] head the entire time." When the court reminded him of his duty to decide whether the government met its burden of proof based only on the evidence presented, he did not provide any assurance that he could perform that duty. Instead, he reiterated that his experience and emotional reaction would affect his ability to evaluate the evidence.

While jurors need not arrive as blank slates, *see Irvin v. Dowd*, 366 U.S. 717, 722–24 (1961), the Constitution requires that they "lay aside [their] feelings and reach a verdict based on the evidence presented and the court's instructions," *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1220 (9th Cir. 1997). Juror 48 told the

court that he could not do so. He thus presented a colorable issue of actual bias.

## B. The district court's response was an abuse of discretion.

Because Juror 48 raised a colorable claim of actual bias, the court was required to either excuse him or adequately investigate the claim before he continued to serve. *Dyer*, 151 F.3d at 974–79. The court did not excuse Juror 48, so we consider whether it adequately investigated whether he could serve impartially. It did not.

### 1. The court conducted no inquiry when the bias arose, and Juror 48's status an alternate did not permit deferral of an inquiry.

When Juror 48 volunteered his views on Friday afternoon, the court erred by neither investigating his bias nor making any plan for doing so. It could have asked Juror 48 whether he could set aside his feelings and focus solely on the evidence presented at trial; whether hearing testimony would harden his views; or what effect his inability to disregard Colar's statements might have on assessing the government's case. It could have told the parties it would inquire further on Monday morning. Or it could have excused him. It "did none of these things, leaving the matter in doubt." *Dyer*, 151 F.3d at 975–76; *see Bolandian*, 173 F.4th at 1011 (reversing a defendant's conviction because, when faced with allegation of juror bias, district court did not "inquire further into the reasons for [the juror's] feelings of bias, or make an attempt to rehabilitate.").

In fact, the district court suggested that it did not have to take any action. In response to Colar's objection to Juror 48, the court said, "he's coming back Monday," and "if I need

to think about it further on Monday, I can." Again, a court "fulfills [its] duty only if [it] erects, and employs, a suitable framework for investigating the allegation of bias and gauging its effects," and it "must find facts, not make assumptions." *Dyer*, 151 F.3d at 978, 976 (first citation modified).

The court appears to have deferred further consideration of the bias issue because Juror 48 was an alternate. On Wednesday of the next week, after the court excused a juror, the court stated: "So now I need to bring in [Juror 48] and voir dire him since he would now be on the jury given that excusal, and I need to determine if he can serve." But Juror 48 had been serving on the jury as an alternate, under oath, since Friday. *See Olano*, 507 U.S. at 740. Discretion here governs the form of the inquiry, not whether to conduct one. *Dyer*, 151 F.3d at 974–75 (holding that where a juror is suspected of prejudice, a district court fulfills its duty only if it conducts a suitable inquiry). Deferring investigation because the juror bias claim involved an alternate juror is not a permissible exercise of discretion. The court's own framing in its second exchange with Juror 48, telling him that he was "now part of the jury," only confirmed the error, treating the duty to investigate as triggered by the need to determine if Juror 48 could serve on the regular jury panel rather than by the bias he had earlier expressed.

> 2. *The court's belated investigation did not unequivocally confirm that Juror 48 was not actually biased.*

A juror's initial expression of bias can be overcome if, upon further inquiry, he unequivocally commits to setting it aside and deciding the case based on the evidence presented. *Image Tech. Servs.*, 125 F.3d at 1220; *Alexander*, 48 F.3d at

1484. Juror 48 eventually told the court that he was "perfectly over" his earlier reaction and had no concern about his ability to be impartial. Still, for two reasons, the district court abused its discretion in finding Juror 48 fit to serve and failing to excuse him for cause under an actual bias theory.

First, a juror's assurances must be measured against the whole record, with any remaining doubts resolved against the juror. *See Murphy v. Florida*, 421 U.S. 794, 800 (1975); *Gonzalez*, 214 F.3d at 1114. Juror 48 attributed his change of heart to having "time to calm down" and remembering how to "overcome it." That described a shift in his current emotional state, not a reassessment of the conclusions that he had drawn. The court did not ask whether he still believed that there was "a thing" or that the defense theory lacked merit, the very views that made Juror 48's statements so serious. A bare promise by Juror 48 that he was "not going to be biased" did not, in context, unequivocally assure his impartiality.

Second, Juror 48's bias was tied to a defense theory that would recur. As the government admits, racial and religious targeting was "a theme of Colar's defense" throughout his trial. That theme triggered Juror 48's prejudicial reaction. In his continuing objection, Colar raised the concern that "if something else comes up that I say and it re-triggers . . . his emotions, [] I don't think he can put it to the side." Yet the court never asked Juror 48 that critical question: whether hearing the defense theory throughout the remaining weeks of trial would retrigger his emotions and impair his ability to serve impartially.

And by the time of the second exchange, Juror 48 had served on the jury during opening statements and testimony

from two government witnesses. Jurors who have begun to hear evidence feel an "investment . . . in their role" and a "commitment to seeing the process through." *Kechedzian*, 902 F.3d at 1030. Juror 48 was not well-positioned to reliably assess whether he would be able to avoid another negative emotional reaction during the rest of the trial. And "putting the onus on a juror to speak up, after a trial starts, undermines the very purpose of voir dire." *Id.*

## III. CONCLUSION

The district court abused its discretion by failing to promptly investigate Juror 48, deferring inquiry until a seat opened, and conducting an inadequate colloquy after the juror had heard evidence. The record as a whole was unclear as to whether Juror 48 unequivocally committed to setting aside his bias, and this doubt should have been resolved against him. The court's failure to excuse him was an abuse of discretion. These errors ultimately deprived Colar of his Sixth Amendment right to an impartial jury. We **VACATE** Colar's convictions and **REVERSE** and **REMAND** for a new trial.